IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER GLASS & ALUMINUM, INC., an Illinois Corporation | )<br>)<br>)<br>) |
| Plaintiff, | ) 1:16-cv-11532 |
| v. | )<br>) Hon. Virginia M. Kendall |
| THOMAS O'KEEFE | )<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Christopher Glass & Aluminum, Inc. ("CGA"), initially sought a temporary restraining order and a preliminary injunction to prevent its former employee, Defendant Thomas O'Keefe, from using CGA's alleged confidential and trade secret information in his new employment and to bar O'Keefe from soliciting CGA's customers and employees. (Dkt. 6 at 1.) The Court denied Plaintiff's TRO motion because O'Keefe represented that he returned the material to CGA, agreed not to use it, and agreed not to solicit CGA's customers, so the case proceeded to discovery. (*See* Dkt. 16.) Under current consideration are O'Keefe's Motion to Dismiss Counts II, IV, VI, and VII of the Complaint with Prejudice [28] and his Rule 12(f) Motion to Strike Portions of the Complaint Pursuant to Fed. R. Evid. 408 [30]. For the foregoing reasons, Defendant's Motion to Dismiss is granted in part and denied in part and his Motion to Strike is granted.

## BACKGROUND

For purposes of a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded allegations and draws all reasonable inferences in favor of the plaintiff. *See Appert v. Morgan Stanley Dean Witter, Inc*. 673 F.3d 609, 622 (7th Cir. 2012). CGA, which has been in business

1

since 1981, fabricates, engineers, and installs glass products and framing systems. (Dkt. 1 ¶¶ 12-13.) O'Keefe is former CGA employee who worked as CGA's Service Sales Manager and was responsible for developing CGA's bids and estimates, selling CGA's services, overseeing service jobs, and managing long-term client relationships. (*Id.* ¶¶ 18, 23.) As part of his job at CGA, O'Keefe required regular access to CGA's trade secrets and confidential and proprietary information, including its Service Log, which included CGA's detailed bidding history, prices, materials, and customer information. (*Id.* ¶¶ 24-25, 34-35.) Before O'Keefe left CGA, he printed out part of the Service Log without CGA's permission and had a series of lengthy telephone conversations with several employees of Arlington Glass, one of CGA's competitors. (*Id.* ¶¶ 29, 36-37, 40-42.) After leaving CGA, O'Keefe was immediately hired by Arlington Glass. (*Id.* ¶ 19-20.) CGA alleges that O'Keefe's misappropriation of the Service Log constituted a breach of fiduciary duty and violated his Employee Agreement with CGA, which he signed on July 14, 2014, and which prohibited O'Keefe from divulging "CGA's Trade Secrets, Trade Secret information and confidential proprietary information[.]" (*Id.* ¶¶ 44-45, 130-142.) O'Keefe also acknowledged that he received receipt of CGA's handbook, which outlines policies related to trade secrets. (*Id.* ¶ 126; Dkt 1-5 at 39.) CGA also alleges that following his departure, O'Keefe, on behalf of Arlington Glass, used the Service Log to underbid CGA on projects for as little as $150 and solicited CGA's key employees to work at Arlington Glass. (Dkt. 1 ¶¶ 183-200, 202-218.)

CGA brought claims for injunctive relief under the Defend Trade Secrets Act of 2016 ("DTSA") and the Illinois Trade Secrets Act (Count I), breach of fiduciary duties under the DTSA (Count II), trade secret misappropriation under the DTSA (Count III), breach of fiduciary duties under the Illinois Trade Secrets Act (Count IV), trade secret misappropriation under the

Illinois Trade Secrets Act (Count V), common law replevin (Count VI), and common law breach of contract (Count VII).

**LEGAL STANDARD**

A complaint must contain factual matter sufficient to state a claim that is plausible on its face. Fed R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Such a set of facts must "raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The complaint must fairly notify defendants of the claim and its basis. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (2010) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

**DISCUSSION**

O'Keefe argues that CGA's state law claims for breach of fiduciary duty (Counts II, IV) and replevin (Count VI) are preempted by the Illinois Trade Secrets Act (ITSA) and his breach of Contract Claim (Count VII) fails as a matter of law because it is predicated on an Employee Handbook that indicates it is not an enforceable contract. (Dkt. 28 at 1-2.) O'Keefe also moves to strike Exhibits B and C to Plaintiff's Complaint and related allegations, which he argues are settlement-related documents which are protected by Rule of Evidence 408. (Dkt. 30)

**I.      Preemption Under the ITSA**

O'Keefe argues that because CGA's common law claims for breach of fiduciary duty and replevin are "based entirely upon O'Keefe's alleged misappropriation of Plaintiff's trade secrets," they are preempted by the ITSA. (Dkt. 28 at 2-4.) With a handful of enumerated exceptions, the Illinois General Assembly proclaimed that the ITSA "is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." 765 Ill. Comp. Stat. Ann. 1065/8 (West 2017). Those exceptions to preemption are limited to: (1) contractual remedies; (2) other civil remedies

3

that are not based upon misappropriation of a trade secret; (3) criminal remedies; and (4) the definition of a trade secret contained in any other Illinois statute. *Id.*

To determine whether CGA's common law claims are preempted by the ITSA, it is necessary to closely examine the relevant allegations. CGA alleges that O'Keefe violated his fiduciary duties owed to CGA resulting from his managerial role soliciting CGA employees (Dkt 1 ¶ 201-02) and by "taking actions for the benefit of himself and of his new employer, Arlington Glass and to the detriment of CGA, while still employed at CGA as described aforesaid and since he left CGA." (*Id.* ¶¶ 241-258.) CGA also alleges that O'Keefe breached his fiduciary duties by "retaining a copy of the Log and by removing it before terminating his employment with CGA, and by using the Trade Secret information and confidential and proprietary information contained in the Log to successfully solicit customers and compete with CGA on behalf of his new employer and where not successful in competing with CGA, in damaging the customer relationships of customers with CGA after he left." (*Id.* ¶¶ 259-269, 313.) CGA also alleges that O'Keefe breached his fiduciary duties to CGA by failing to disclose his adverse activities to CGA during or after his employment. (*Id.* ¶¶ 264-65.) In its replevin count, CGA alleges that it is entitled to the return of "documents, data, electronic files and information that have been unlawfully retained by O'Keefe that were unlawfully forwarded to non-CGA devices and email accounts and to Arlington Glass." (*Id.* ¶ 348.) CGA's ITSA claim alleges that the information taken by O'Keefe constituted trade secrets, CGA maintained the confidentiality of that information, CGA invested heavily into the creation of the trade secrets, which led to CGA's economic benefit, and CGA was damaged by O'Keefe's use of the trade secrets. (Dkt. 1 ¶¶ 294-321, 322-346 .) CGA seeks monetary damages and extensive injunctive relief for O'Keefe's alleged ITSA violations, including the return of the trade secrets. (*Id.* ¶¶ 321, 346.)

The parties rely primarily on two Seventh Circuit decisions analyzing the scope of the ITSA but do not cite to any Illinois state court interpreting the Act. In doing so, they have "fail[ed] to recognize that we defer to an Illinois court's interpretation of state law." *MacDonald v. Estate of Gayton*, 469 F.3d 1079, 1082 n.1 (7th Cir. 2006) (following First District Appellate Court of Illinois decision when analyzing issue of state law).

Although the Illinois Supreme Court has not analyzed the scope of ITSA's preemption provision, an Illinois appellate court has examined the statute under relatively similar circumstances. In *Alpha School Bus Co., Inc. v. Wagner*, the court reversed the wholesale dismissal of two breach of fiduciary duty claims that were based in part on the misappropriation of trade secrets by interpreting ITSA's preemption provision to only preclude claims solely premised on the misappropriation of trade secrets. 910 N.E.2d 1134, 1150(Ill. App. Ct. 2009). Wagner, a former Alpha employee, allegedly breached his fiduciary duties to his employer by setting up a competing business and preparing bids for both companies while he was still working at Alpha. *Id.* In finding that the trial court erred in dismissing the breach of fiduciary duty claims against Wagner, the court explained that "[a]lthough plaintiffs' claim includes allegations that Wagner used trade secrets in preparing the bid, this claim is not dependent upon the misappropriation of trade secrets. Plaintiffs also claim, inter alia, that Wagner established a competing business while still employed by Alpha, solicited Alpha's employees to work for the competing business, and converted various property of Alpha. Therefore, the Trade Secrets Act does not preempt this claim[.]" *Id.* Alpha also accused another defendant, Hackel, of inducing Wagner to breach his fiduciary duties in five different ways, one of which included "conspiring with Wagner to usurp Alpha's trade secrets." *Id.* at 395. There, the Court found that Alpha's allegations related to the misappropriation was preempted by the ITSA but the other allegations

5

related to the breach of fiduciary duty, which included assisting Wagner in competing with Alpha while he was still an employee and soliciting Alpha's employees and customers, were not preempted by the ITSA. *Id.*

Several federal courts have similarly interpreted the scope of ITSA's preemption provision, especially when examining breach of fiduciary duty claims. In *Hecny Transportation, Inc. v. Chu*, a case relied on heavily by CGA, the Seventh Circuit found that the plaintiff's breach of fiduciary claim against a former employee was not preempted by the ITSA, even though the claim was predicated in part of Chu's misuse of customer information. 430 F.3d 402, 404–05 (7th Cir. 2005). In doing so, the Court noted that "[a]n assertion of trade secret in a customer list does not wipe out claims of theft, fraud, and breach of the duty of loyalty that would be sound even if the customer list were a public record." *Id.* at 405. *See also Traffic Tech, Inc. v. Kreiter*, No. 14-CV-7528, 2015 WL 9259544, at *9 (N.D. Ill. Dec. 18, 2015) (finding breach of fiduciary duty claim related to usurpation of business opportunities was not preempted by ITSA even though defendant had access to confidential information because claim was distinct from claim for misappropriation and would stand even if the information that he allegedly misappropriated did not constitute trade secrets); *Nat'l Auto Parts, Inc. v. Automart Nationwide, Inc.*, 2015 WL 5693594, at *5 (N.D. Ill. Sept. 24, 2015) (fiduciary duty claim based on defendant's act of competing with the plaintiff was not preempted by the ITSA because it was independent of misappropriation claim); *Bankers Life & Cas. Co. v. Miller*, No. 14 CV 3165, 2015 WL 515965, at *8 (N.D. Ill. Feb. 6, 2015) (finding that breach of fiduciary claim was not preempted by ITSA when the allegation was based on "more than the mere taking of trade secrets," including inducing employees to quit as part of scheme to compete and continued using improperly acquired information once they began competing); *Von Holdt v. A-1 Tool Corp.*, No.

6

04 C 04123, 2013 WL 53986, at *13 (N.D. Ill. Jan. 3, 2013) (finding that breach of fiduciary duty claims were not preempted by ITSA based on the holdings of *Hecny* and *Alpha*).

While ignoring *Alpha*, O'Keefe relies primarily on the Seventh Circuit's decision in *Spitz v. Proven Winners North America*. There, the Court found that the appellant's claim for quantum meruit and unjust enrichment, which were based solely on the misappropriation of an idea for "pet friendly" plants, were preempted by the ITSA because "unjust enrichment and quantum meruit are essentially claims for restitution[.]" *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 733 (7th Cir. 2014). The Court went on to note that the claims were preempted even though the idea was not a trade secret, because "Illinois courts have read the preemptive language in the ITSA to cover claims that are essentially claims of trade secret misappropriation, even when the alleged 'trade secret' does not fall within the Act's definition." *Id.* In support of both propositions, the Court cited *Pope v. Alberto-Culver Company*, a 1998 Illinois appellate decision that similarly held that a claim for unjust enrichment was preempted by the ITSA it "is essentially a claim for restitution." 694 N.E.2d 615, 620 (Ill. App. Ct. 1998). All of these cases make clear that when a common law tort claim is premised entirely on the misappropriation of a trade secret or related idea, it is preempted by the ITSA. When a claim is premised on more than the mere appropriation of information, the ITSA does not preempt the claim. Said another way, "the crux of the question has been whether the claim would lie if the information at issue were not confidential." *IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, 191 F. Supp. 3d 790, 802 (N.D. Ill. 2016). *See also Hecny Transp., Inc.*, 430 F.3d at 404 ("Misappropriation of a trade secret differs from other kinds of fiduciary defalcations, which the statute therefore does not affect.").

The plain language of the statute along with the reasoning of the above-discussed opinions supports dismissing only those aspect of CGA's breach of fiduciary duty claim that are premised directly on the misappropriation of CGA's trade secrets. *See Alpha School Bus Co., Inc.*, 910 N.E.2d at 1150 (2009)*; Hecny Transp., Inc*, 430 F.3d at 404–05 ("claims are foreclosed only when they rest on the conduct that is said to misappropriate trade secrets."). CGA's breach of fiduciary duty allegations related to O'Keefe's solicitation of employees and customers and the misuses of the confidential information are not preempted by the ITSA, as they are not directly predicated on the misappropriation of a trade secret and would lie if the information at issue were not a trade secret. *Hecny Transp., Inc*, 430 F.3d at 404–05. CGA's replevin claim, however, is preempted because it is based entirely on the misappropriation of CGA's trade secrets and seeks only the return of the misappropriated information, a remedy contemplated by CGA's ITSA claim.

## II. Breach of Contract

O'Keefe urges the Court to dismiss CGA's breach of contract claim (Count VII) because it is based on CGA's Employee Handbook, which states that it is "neither a contract of employment nor a legal document." (Dkt. 28 at 4-5.) That description, however, misstates CGA's breach of contract claim. In its Complaint, CGA alleges that the Employee Agreement that O'Keefe signed was a legally binding document and prohibited him from disclosing trade secrets and confidential and proprietary information. (Dkt. 1 ¶¶ 353-55.) CGA also alleged that O'Keefe breached his Employee Agreement by using the proprietary information and that CGA was damaged. (*Id.* ¶¶ 356-57.) In addition to these allegations, CGA attached the Employee Agreement as pages 41-42 of Exhibit E to its Complaint. (Dkt. 1-5.) Exhibit E is Tom O'Keefe's CGA Employee Handbook and, as expected, includes details of CGA's employment

policies including its non-discrimination policy, along with sections on employee leave, employee benefits, and other employment policies. (*Id.*) As O'Keefe points out, the handbook includes an acknowledgement form, that indicates that the "manual is neither a contract of employment nor a legal document." (Dkt. 1-5 at 39.) CGA's contract claim, however, is not based on this acknowledgement form or the manual itself. Rather, it's based on the "Employee Agreement Regarding Confidential Information and Non-Solicitation," which is appended to the end of the manual. (*Id.* at 41-42.) And while O'Keefe argues that the Employee Agreement is part of manual and thus not binding, on its face, the Employee Agreement indicates that it is an enforceable agreement. (*See id.* ("I understand that if I breach this Agreement, the Company reserves the right to avail itself of all legal or equitable remedies to prevent the impermissible use of Confidential Information").) At this stage, CGA needs only to plead the plausible existence of a contract, which it has done. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010), *as amended* (Dec. 16, 2010). When considering CGA's allegations regarding the contract along with examining the Employee Agreement itself, CGA has sufficiently pled its breach of contract claim and O'Keefe's Motion to Dismiss Count VII is denied. To the extent there is ambiguity regarding the parties intent that is a question of fact that the Court "cannot properly determine on a motion to dismiss." *Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 994 (Ill. 1990).

### III. Motion to Strike

O'Keefe moves to strike portions of CGA's complaint relating to the voluntary return of the Service Log and O'Keefe's accompanying affidavit, which were sent to CGA by O'Keefe as part of pre-suit negotiations and were labeled as inadmissible pursuant to Federal Rule of Evidence 408. (Dkt. 30 at 1-2.) Rule 408 prohibits the use of evidence regarding conduct or a

statement made during compromise negotiations about the claim or the "furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim" to prove liability for a claim. Fed. R. Evid. 408. "Rule 408 addresses the concern that a norm of admitting offers of settlement will reduce efforts to settle by others in the future." *Walker v. Walker*, 701 F.3d 1110, 1117 (7th Cir. 2012). "For Rule 408 to be applicable, defendants needed to make a 'substantial showing' that the [material] was, in fact, part of a settlement attempt." *Raybestos Prods. Co. v. Younger*, 54 F.3d 1234, 1241 (7th Cir. 1995) (quoting *New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1482 (7th Cir.1990)). O'Keefe has met that burden. The challenged material was sent by O'Keefe's counsel in respond to a demand letter from CGA's counsel requesting return of the Service Log, requesting that O'Keefe cease and desist from using the Service Log, and accusing O'Keefe of misappropriation and breaching his fiduciary duties to CGA. (Dkt. 1-1.) O'Keefe's response enclosed the copy of the Service Log that O'Keefe removed from CGA and an affidavit admitting that he retained a hard copy of the spreadsheet after he left CGA's employ but asserting that he did not make any copies of the Service Log and had not shared it with his new employer. (Dkt. 1-2; 1-3.) The letter from O'Keefe's counsel explicitly states that it is for settlement purposes only and is protected by Rule 408. (*Id.*) In its Complaint, CGA repeatedly points to the letter enclosing the Log and O'Keefe's affidavit as admissions of liability. (*See* Dkt. 1 ¶¶ 31, 36, 134, 158, 178-82, 188-91, 193.) Courts within this district have stricken similar pre-suit communications referenced in complaints, finding them inadmissible under Rule 408. *See, e.g., Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2011 WL 3946581, at *2 (N.D. Ill. Sept. 2, 2011); *Fid. Nat'l Title Co. v. Law Title Ins. Co.*, No. 04 C 6382, 2005 WL 1126899, at *7 (N.D. Ill. May 3, 2005). In an effort to serve the

purpose of Rule 408 to encourage settlements, the Court strikes all references in CGA's Complaint to O'Keefe's counsel's letter and O'Keefe's affidavit, along with the exhibits themselves.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is granted in part and denied in part and his Motion to Strike is granted.

_____
Hon. Virginia M. Kendall
United States District Judge

Date: June 30, 2017